# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Regents of the University of California,<br><br>                              Plaintiff,<br>  vs.<br><br>Paul S. Aisen, et al.,<br>                             Defendants. | CASE NO. 15-cv-1766-BEN (BLM)<br><br>ORDER DENYING<br>MOTION TO REMAND |

      Plaintiff moves to remand this case to the Superior Court of the State of California, County of San Diego. The motion asks whether this, or any federal court, may exercise jurisdiction over this case which was filed in state court and asserts only state law claims for relief. For the reasons stated below, this Court denies the motion.

      Federal courts are courts of limited jurisdiction. Within limits, a federal court is authorized to exercise original jurisdiction in a civil action "arising under" the laws of the United States. 28 U.S.C. § 1331. One such law of the United States is the Copyright Act. 17 U.S.C. §§ 101, *et seq*. Congress specifically granted to federal district courts original jurisdiction over "any civil action *arising under* any Act of Congress relating to . . . copyrights . . . ." 28 U.S.C. § 1338(a) (emphasis added). And for actions arising under the Copyright Act, federal courts have exclusive jurisdiction. *Id.* ("No State court shall have jurisdiction over any claim for relief *arising under* any Act of Congress relating to . . . copyrights.") (emphasis added). The facts are complicated and known to the parties so they are not repeated here.

1  Plaintiff asserts that its Complaint contains only state law claims. Plaintiff
2  argues that it is the master of its Complaint and that the well-pleaded complaint rule
3  dictates that federal jurisdiction must be determined by looking no farther than the
4  four corners of the Complaint. Plaintiff is correct that the well-pleaded complaint
5  rule is the general rule and that its Complaint asserts only state law claims for relief.
6  "However, the well-pleaded complaint rule has a necessary corollary — the artful
7  pleading doctrine. Under the artful pleading rule a plaintiff may not defeat removal
8  by omitting to plead necessary federal questions in a complaint." *JustMed v. Byce*,
9  600 F.3d 1118, 1124 (9th Cir. 2010) (internal quotations and citations omitted).
10 "Even where a claim finds its origins in state rather than federal law," the Supreme
11 Court has, "identified a 'special and small category' of cases in which arising under
12 jurisdiction still lies." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citation
13 omitted).
14  This case is within that special and small category of cases, because some of
15 the state law claims for relief "arise under" the federal Copyright Act and the Act's
16 work-for-hire doctrine. "Although a complaint may not state a Copyright Act claim
17 on its face, federal jurisdiction may be appropriate if resolution requires application
18 of the work-for-hire doctrine of the Copyright Act . . . ." *JustMed*, 600 F.3d at
19 1124; *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1473 (9th Cir.
20 1984) (a court may look beyond facts pleaded in a complaint to ascertain facts that
21 would have appeared in a "well pleaded" complaint), *overruled on other grounds by*
22 *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985).
23  The Supreme Court uses a four-part test to identify the controversies that fit
24 within that "special and small category" of exceptional cases. "[F]ederal
25 jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised,
26 (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court

without disrupting the federal-state balance approved by Congress."[1] *Gunn*, 133 S. Ct. at 1065. This case meets all four requirements.

First, a federal law issue of ownership and control under the Copyright Act's work-for-hire doctrine is necessarily raised by several of the asserted claims for relief. Second, the issue of ownership and control is actually disputed. Third, the issue is substantial in the federal sense. Fourth, the issue is capable of resolution in federal court without disrupting the federal-state balance as evidenced by § 1338(a)'s ascribing exclusive jurisdiction over copyright issues to the federal courts.

The parties do not argue over the *fourth* element of the *Gunn* test. And they do not argue much over the *second*. At the hearing, Plaintiff suggested that ownership is not really the contested issue, but the Complaint and Plaintiff's briefs suggest ownership is a disputed issue. Certainly, if not outright ownership is disputed, the right to possess (or more accurately for digital data, the right to control) is actually disputed. As to the *third* element, it is true that not every state law case that requires the application of federal law supports "arising under" jurisdiction. The federal law issue must be substantial. It must be substantial not only for the parties, but for the federal system as a whole. For example, a "backward-looking" hypothetical question of patent law arising in a legal malpractice action based on state law is not a federal issue with enough substance. *Gunn*, 133 S. Ct. at 1066-67. But this case does not turn on answering a backward-looking, hypothetical copyright question that will affect no one beyond the parties in the case. The questions to be answered may affect a large number of medical researchers at both the Plaintiff's thirteen university campuses and at the Defendants' university campus, as well as employees at other colleges engaged in

---

[1] "Where all four of these requirements are met, we held, jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 133 S. Ct. at 1065.

1  academic research. And while the Court is not expressing its opinion on the
2  answers to these questions at this point, the answers could have an impact on the
3  future conduct of university medical research.

4        The real argument here is over the *first* element of the *Gunn* test. That is, is
5  the federal Copyright Act issue necessarily raised by the Complaint? On the first
6  element, this case is like the *JustMed* case. In *JustMed*, a company bringing a state
7  law employment claim for relief against an ex-employee presented a case of
8  "arising under" jurisdiction. In *JustMed*, the resolution of the employment law
9  claim turned on deciding the ex-employee's rights in computer software he created
10 for the company during his employment. Those rights were determined by looking
11 to the federal Copyright Act's work-for-hire doctrine. *JustMed*, 600 F.3d at 1124
12 ("[T]he complaint asserts JustMed's ownership of the source code, while at the
13 same time acknowledging that ownership is disputed. These allegations directly
14 implicate the Copyright Act."). Like the case here, the state law claims for relief in
15 *JustMed* did not mention the federal Copyright Act.

16       The *JustMed* claims for relief are also similar to the state law claims asserted
17 by the Plaintiff in this case. For example, in *JustMed*, the plaintiff asserted claims
18 for: (a) breach of fiduciary duty; (b) interference with a prospective economic
19 advantage; (c) conversion; (d) misappropriation of a trade secret; and (e) injunctive
20 relief. *JustMed v. Byce*, Case No. 1:05cv333-S-EJL (D. Idaho filed Aug. 22, 2005)
21 Notice of Removal, Ex. A). In the case at hand, among the seven claims for relief
22 asserted[2] are three of the same types of claims: (a) breach of fiduciary duty (Count

---

[2] Plaintiff has filed an amended complaint adding two claims for relief based on California's Political Reform Act of 1974. Plaintiff also narrows its claims to try to avoid the copyright issue. For example, in the amended complaint's breach of fiduciary duty claim Plaintiff adds this narrowing language: "[t]his claim is not predicated on . . . the infringement of copyright in software source code that was developed and is owned by The Regents." First Amended Complaint, at ¶ 87.
    However, it is hornbook law that removal jurisdiction is based upon the operative complaint at the time of removal rather than later amended complaints. *See Schwarzer, Tashima & Wagstaffe*, Rutter Group Practice Guide: Federal Civil Procedure Before Trial § 2:2503 (Nat'l ed. 2015) (citing *Libhart v. Santa Monica*

1), and its corollary, breach of duty of loyalty by employee (Count 2); (b) interference with prospective economic advantage (Count 4), and its corollary, interference with contract (Count 3); and (c) conversion (Count 5). Both also seek injunctive relief.[3] *JustMed* is controlling law and dictates the answer to the jurisdictional question in this case.

Nevertheless, Plaintiff argues that the well-pleaded complaint rule requires remand. (Reply in Support of Mot. Remand, at 2.) But Plaintiff ignores the corollary – the artful pleading doctrine, pointed out by the Ninth Circuit in *JustMed*. 600 F.3d at 1124. Plaintiff remonstrates that this case is different because in *JustMed* and other cases, the complaints alleged a question under the Copyright Act. (Reply in Support of Mot. Remand, at 2-3.) But that is inaccurate, at least as far as the *JustMed* complaint is concerned. The *JustMed* complaint did not mention copyrights, the federal Copyright Act, or any federal law. *JustMed*, No. 1:05cv333-S-EJL, Notice of Removal.

Plaintiff next casts doubt on a recent case upon which Defendants' rest: *Calicraft Distributors, LLC v. Castro*, No. CV 15-1041 BRO (AJW), 2015 WL 1789014 (C.D. Cal. Apr. 17, 2015). Plaintiff underscores that in *Calicraft*, the court found the copyright work-for-hire doctrine was not implicated and remanded the dispute to state court. (Reply in Support of Mot. Remand, at 3.) But in *Calicraft*, the court found it important that the "Plaintiffs expressly disclaim that the software was a work-for-hire," and instead assert a perpetual license in software. 2015 WL 1789014, at *6. Plaintiff here did not disclaim software ownership based on a

---

*Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979)); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[A]n amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."); *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable . . . .").

[3]In both cases, a temporary restraining order had been obtained prior to removal.

work-for-hire. On the contrary, it is the assertion of work-for-hire ownership set forth in Plaintiff's state court arguments that led to the removal to this Court. Moreover, the complaint asserts ownership of intellectual property and aggregated research data. (*See, e.g.*, Notice of Removal (Docket No. 1) Ex. 1, Complaint ¶ 33 ("[A]ll joint intellectual property created as a result of the clinical studies will belong jointly to Toyama . . . and The Regents."); ¶ 68 ("The Regents owned all data related to the ADCS project, as well as the data and contents of Amazon Account No. 675713428646, and the data contained on the UCSD laptop computers issued to the Individual Defendants ('the ADCS Data').").)

    The thrust of Plaintiff's contention now is that it does not claim a copyright in the electronic data capture software and it does not claim a copyright in the data aggregation. Dismissing it as a minor detail and coincidence, Plaintiff now says, "The happenstance that the *data* is collected on a computer software program . . . is an incidental detail unnecessary to any of Plaintiff's claims, and not alleged in the Complaint." (Reply in Support of Mot. Remand, at 4 (emphasis in original).) Urging their camel toward a needle's eye, Plaintiff disclaims ownership of the data and explains that its conversion claim does not require proof of ownership. "[T]he Complaint only alleges conversion of the *data*." (*Id.* (emphasis in original).) "And even if the complaint did allege conversion of the EDC system, California law does not require a plaintiff to prove copyright ownership, or indeed any ownership at all." (*Id.* at 6.) Actually, the Complaint does assert ownership over the collected data: "Such contracts specify that all data created or captured by UCSD related to the ADCS program will be jointly *owned by The Regents* and the sponsors." (Complaint ¶ 29 (emphasis added) and ¶ 69 ("The Defendants . . . have wrongfully exercised dominion and control over ADCS Data, and . . . interfered with *The Regents' ownership* of the ADCS Data.") (emphasis added).)

    In other briefing, Plaintiff uses more expansive terms describing ownership of

the electronic data capture computer "system" and ownership of the collected data. (*See* Opp'n. to Defs.' Mot. to Clarify or Modify Prelim. Inj. at 2 ("They simply commandeered the ADCS data and computer systems . . . and started treating UCSD's property and research studies as USC's own."); at 5 ("At most, the contracts provide sponsors co-ownership of *data* generated in their study, but they confer no ownership interest in UCSD's computer systems, accounts, and other property wrongfully taken by Defendants.") (emphasis in original); at 7 (". . .the computer software system that UCSD had developed for the ADCS, the Electronic Data Capture (EDC) system."); at 9 ("Without the ADCS data and computer systems that Defendants wrongfully commandeered from UCSD . . . ."); at 10 ("Lilly has no claim to UCSD's pre-existing computer system, the Electronic Data Capture (EDC) system, which UCSD developed more than five years ago."); at 11 ("The USC Defendants . . . unilaterally seizing control of ADCS data and UCSD computer systems . . . ."); at 21 ("UCSD's contracts provide sponsors co-ownership of *data* generated in their studies, but confer no ownership interest in UCSD's computer systems or in the AWS, Google, Github, and Bitbucket accounts wrongfully commandeered by Defendants.") (emphasis in original).)

These broad ownership terms are similar to the language Plaintiff used in the state court. For example, on the first page of a brief seeking the preliminary injunction, Plaintiff asserted ownership based on the federal Copyright Act, federal regulations, university guidelines, and the terms of the grant contracts. Plaintiff contended,

> *the EDC system (and the underlying software programs) and the ADCS Data is owned by The Regents and by the Sponsors, as clearly set out in the Copyright Act, applicable federal regulations, University of California Guidelines, and by the clear terms of the grant contracts.*

(Notice of Removal (Docket No. 1) Ex. 3, Supp. Brief in Support of Prelim. Inj. & Appt. of Spec. Master at 1 (emphasis added).) And again,

> There can be no dispute that the EDC system and the underlying source code is the property of UCSD. This is because the system was designed and the software was written by UCSD employees . . . . Not only does Cal. Labor Code § 2860 make clear that the system belongs to UCSD, *so too does the Federal Copyright Act, which provides: "in the case of a work made for hire, the employer . . . owns all of the rights comprised in the copyright."* 17 U.S.C. § 201(b).
> Moreover, the federal regulations that cover this government-funded project, 45 C.F. R. §§ 74.34 and 74.36 also make clear that the EDC software system is exclusively UCSD's property . . . .

(*Id.* at 4 (emphasis added).) Plaintiff also referred to its own employment regulations and guidelines regarding copyrights: "One pertinent policy statement . . . provides that '*Ownership of copyrights to sponsored works shall be with the University* unless the sponsored agreement states otherwise.'" (*Id.* at 5 (emphasis in original).)

In other words, Plaintiff's claims for relief and its formal arguments allege its own ownership of data and software. The accuracy of the claims necessitate resort to federal copyright law and perhaps federal regulation of National Institute of Health research contracts.[4] Even The Regents' own research policies address copyrights in faculty research productions. *See, e.g., Works Created at UC*, http://copyright.universityofcalifornia.edu/ownership/works-created-at-uc.html (last visited Oct. 29, 2015) ("In higher education, copyright ownership is typically addressed through institutional policy on written agreements. It is widespread academic tradition that faculty own the copyright to scholarly works that they produce. The University of California's policies on Copyright ownership . . . clarify who owns the copyright to original works created at UC and how the rights of

---

[4] "Data should be made as widely and freely available as possible while safeguarding the privacy of participants, and protecting confidential and proprietary data." *NIH Data Sharing Policy Brochure*, Pub. No. 03-5399, Nat. Inst. Health Off. Extramural Research (May 20, 2003), *available at* http://grants.nih.gov/grants/policy/data_sharing/data_sharing_guidance.htm.

ownership are allocated between the authors and the University. According to UC's policy, ownership of copyrights to scholarly and aesthetic works generally reside with the faculty creator, with certain exceptions. If, for example, the work is sponsored or contracted, or is part of a project that has special provisions on copyright ownership, then copyright ownership is generally retained by the university.").

Narrowing the claims to nothing more than the medical study *data*, as Plaintiff now seeks to do, does not eliminate the copyright question. Collections of *data* may be copyrightable. Section 103(a) of the Copyright Act, specifies that "[t]he subject matter of copyright . . . includes compilations," which are defined by section 101 as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. §§ 101, 103. Three elements are required by the Copyright Act in order to qualify as a copyrightable compilation of *data*: "(1) the collection and assembly of preexisting material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement of an original work of authorship." *See Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 357 (1991). Of course, even a copyright in a collection of data will not "keep others from using the facts or data he or she collected." *Id.* at 359. The point is, if Defendant(s) hold a copyright in the collection of study data, that may be sufficient to defeat a conversion claim or California Penal Code § 502(c) claim. And if Plaintiff holds a copyright, it may be insufficient to support a conversion claim or a section 502(c) claim against Defendants who may have a right to use the data, notwithstanding the copyright. While not deciding the answers at this time, the questions here implicate the federal Copyright Act and the work-for-hire doctrine (§§ 101, 103, 201), and perhaps federal regulations on nationally funded medical research. *JustMed* compels the

conclusion that federal jurisdiction exists here.

Plaintiff makes one final argument: the removal came too late. It is a judgment call. But this Court finds that Defendants removed within the 30 day window triggered by the Plaintiff's filing of a motion or "other paper." Motions or "other papers" are specifically identified in the general removal statute as triggers. 28 U.S.C. § 1446(b)(3) ("[A] notice of removal may be filed within 30 days after receipt . . . of a . . . motion, order, or other paper from which it may first be ascertained . . . ."). And specifically for copyright issues, section 1454 authorizes extension of the time limit in section 1446(b), for cause shown.[5] 28 U.S.C. § 1454(b)(2) ("[T]he time limits contained in section 1446(b) may be extended at any time for cause shown."). This Court finds that good cause has been shown for extending the section 1446(b) time limit and the removal is timely.

Therefore, the Motion to Remand is denied.

DATED: October 29, 2015

_____
Hon. Roger T. Benitez
United States District Judge

---

[5] "The [America Invents Act] also added § 1454, a new removal provision . . . intended to provide federal courts . . . with a broader range of jurisdiction." *Vermont v. MPHJ Tech. Investments, LLC*, __ F.3d __, 2015 WL 5667526, at *6 (Fed. Cir. Sept. 28, 2015).