**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br>Plaintiff,<br>vs.<br>PAUL S. AISEN, et al.,<br>Defendants. | CASE NO. 15-cv-1766-BEN (BLM)<br><br>ORDER ON MOTION TO DISMISS OF PIZZOLA, TOBIAS, JIMENEZ-MAGGIORA, HONG, QIU, BRUSCHI, SO and NESSIRIO |

Individual Defendants Pizzola, Tobias, Jimenez-Maggiora, Hong, Qiu, Bruschi, So and Nessirio move to dismiss the First Amended Complaint ("AC").[1] The individual Defendants assert the University of California has failed to state claims for relief under Federal Rule of Civil Procedure 12(b)(6). Because it is a motion to dismiss, unlike a trial, the well-pleaded facts alleged are accepted as true and the Plaintiff is given the benefit of the doubt.

At this juncture of the proceedings, the motion to dismiss is granted for all claims made against individual Defendants Qiu, Bruschi, So and Nessirio. The motion to dismiss of Pizzola, Tobias, Jimenez-Maggiora, and Hong is denied as to

[1]Also named in the amended complaint are individual Defendants Shaffer, Gessert, and Harless. There is no indication on the Court's docket sheet that these Defendants have been served or have appeared in the case. Shaffer, Gessert, and Harless have not moved to dismiss and this Order does not address allegations made against them.

the second claim (breach of duty of loyalty), the fourth claim (intentional interference with contractual relations), the fifth claim (intentional interference with prospective economic advantage), and the seventh claim for conversion of cell phones, laptops, and regulatory papers. The motion to dismiss is granted as to the sixth claim (computer crimes), and the seventh claim for conversion of *data*. The motion to dismiss the tenth claim for relief is granted in part and denied in part. The tenth claim for relief for conspiracy to violate the duty of loyalty (described in the second claim for relief) may proceed against Pizzola, Tobias, Jimenez-Maggiora, and Hong. The tenth claim for relief for conspiracy to commit any of the other torts set out in the amended complaint is dismissed against Pizzola, Tobias, Jimenez-Maggiora, and Hong for failure to state a claim upon which relief can be granted.

## I. RULE 12(b)(6) FAILURE TO STATE A CLAIM

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), test the sufficiency of this required showing. *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).

### A. Judicial Estoppel

The salient facts as alleged by the University of California have been described before and are taken as true solely for the purposes of this Rule 12(b)(6) motion to dismiss. It is specifically now alleged that the ADCS *data* is distinct from the computer systems that UCSD built to collect, maintain, and process the ADCS

///

///

data. It is alleged that,

> the software on which the UCSD computer systems run (which was also developed by UCSD's staff, while employed by UCSD), as used herein, is distinct from the computer system itself and from the ADCS Data; it is the taking of the ADCS Data and the actions taken by the Defendants to block access and restrict UCSD's ability to use its own computer systems that is a material issue in this case, as currently pled; it is not the misappropriation of UCSD trade secrets, or the infringement of UCSD's copyright in any source code or software.

(AC at ¶ 10.)

With the filing of its amended complaint, the University of California has given its allegations a new complexion. Whereas in its original complaint, there were allegations (and later, argument) that placed the federal Copyright Act at issue, now the allegations have been trimmed back to make clear that there is no claim of interference or infringement with copyright rights or privileges.

The individual Defendants, like Aisen and USC, argue that the doctrine of judicial estoppel precludes the change of position. The individual Defendants would have the Court prevent the University of California from freely amending its complaint (perhaps violating the thrust of Rules 8 or 15 in the process) and force it to continue to prosecute its case, upon a theory in which it no longer believes. As in the Order on Aisen's and USC's motion to dismiss, the Court finds that the plaintiff is master of its complaint, it is early in the proceedings, and this Court will not employ its discretion to preclude the University of California from discarding its earlier claimed violation of the federal Copyright Act. Of course, the University of California will not be heard *going forward* to assert that individual Defendants have interfered with any of its copyright rights.

**B. Preemption**

To the extent that the individual Defendants argue, like Aisen and USC argued, that the amended claims are *preempted* by the Copyright Act, the Court adopts its reasoning in its Order on the Aisen/USC motion to dismiss. Other than the claim for conversion of *data*, the claims against the defendants are not

preempted by the federal Copyright Act.

## II. THE CLAIMS FOR RELIEF

Plaintiff asserts ten claims for relief: (1) breach of fiduciary duty; (2) breach of duty of loyalty by employee; (3) aiding and abetting breach of fiduciary duty and duty of loyalty; (4) interference with contract; (5) interference with prospective economic advantage; (6) conversion; (7) commission of computer crimes; (8) violation of Gov't Code § 87100; (9) violation of Gov't Code § 87407; and (10) civil conspiracy. Claims (2), (4), (5), (6), (7) and (10) concern the individual Defendants.

### A. Absence of Specific Allegations About Qiu, Bruschi, So and Nessirio

Individual Defendants Qiu, Bruschi, So and Nessirio argue that all of the claims against them should be dismissed because of the absence of specific allegations in which they are named. This Court agrees. These four individuals are named on the first page of the amended complaint as defendants and residents of San Diego County along with seven other individuals. However, unlike the other seven individual Defendants, these four (Qiu, Bruschi, So and Nessirio) are mentioned only once in the body of the amended complaint and even there only as part of an undifferentiated group. They are described by name in a group with the seven additional individual defendants as conspirators and "double-agents" in a substantive allegation at paragraph 36, amidst the introductory facts of the forty-four-page amended complaint. Specifically, it is alleged that,

> Each of Defendants Jeremy Pizzola, Deborah Tobias, Gustavo Jimenez-Maggiora, Phuoc Hong, Hong Mei Qiu, Stefania Bruschi, Jia-Sing So, Mayya Nessirio, Elizabeth Shaffer, Devon Gessert, and Kelly Harless, were UCSD employees who agreed to join Defendant Aisen in a conspiracy to act as "double agents" — ostensibly employed by The Regents but in reality working to undermine UCSD, to advance their own personal interests, and to serve the interests of Defendant USC, in violation of their obligations under California Labor Code 2863 . . . .

(AC at ¶ 36.) Neither Qiu, nor Bruschi, nor So, nor Nessirio are mentioned again.

Federal Rule of Civil Procedure 8 requires a plaintiff give a defendant *fair notice* of the case against him or her. When evaluating a complaint, the question is asked whether the pleading gives the defendant fair notice of the claim and whether the claim includes sufficient factual matter to state a plausible ground for relief. *Twombly*, 550 U.S. at 555–56. The fair notice and plausibility requirements are to give a defendant an opportunity to effectively defend and to protect a defendant from unfairly being subjected to the expense of litigation. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."). The standard "represents a balance between Rule 8's roots in relatively liberal notice pleading and the need to prevent 'a plaintiff with a largely groundless claim' from 'taking up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value.'" *Eclectic Prop. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 557-58).

Some courts have held that a complaint fails to state a claim if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights. We need not speculate, because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term 'Defendants' or a list of the

defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard."); *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, *4 (N.D. Cal. May 5, 2011) ("Aurora should not be required to guess which allegations pertain to it. By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct."); *Aaron v. Aguirre*, No. 06-CV-1451-H(POR), 2007 WL 959083, *16, n.6 (S.D. Cal. Mar. 8, 2007) (dismissing where complaint did not state which defendants retaliated against which plaintiffs); *Lane v. Capital Acquisitions & Mgmt. Co.,* No. 04-60602 CIV, 2006 WL 4590705, *5 (S.D. Fla., April 14, 2006) ("[T]he Complaint fails to differentiate among the defendants, alleging instead violations by a collective 'defendant,' even though there are five defendants consisting of three individuals and two corporations, one parent and its subsidiary. By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8."); *Howard v. Mun. Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, *12 (S.D.N.Y. Mar. 25, 2005) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do."); *Medina v. Bauer,* No. 02 Civ. 8839(DC), 2004 WL 136636, *6 (S.D.N.Y., Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8."); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. Aug. 15, 2003) ("A

complaint that lumps together thirteen 'individual defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants.").

There are numerous general references throughout the amended complaint to "the Individual Defendants." Of the eleven individually-named defendants, seven defendants are specifically named throughout the substantive allegations. Because Qiu, Bruschi, So and Nessirio are mentioned only once in the substantive allegations, and even in that mention only as members of a larger collective group of individuals, the amended complaint does not give Qiu, Bruschi, So and Nessirio the opportunity to effectively defend themselves and unfairly subjects these particular Defendants to the expense of litigation. *See Starr v. Baca*, 652 F.3d at 1216. Therefore, all claims against Qiu, Bruschi, So and Nessirio are dismissed.

**B. Allegations Against Pizzola, Tobias, Jimenez-Maggiora, Hong**

***1. Claim 2 – Breach of Duty of Loyalty***

In the second claim for relief, the University of California claims that the individual defendants owed a duty of loyalty to their employer that was breached "by committing numerous bad acts which were against the best interests of UCSD and the ADCS, all in an effort to benefit themselves, and their new employer, Defendant USC, and Defendant Aisen, while still employed and being paid by UCSD."

Courts have reached different conclusions about whether California law recognizes as a tort an employee's breach of loyalty owed to his or her employer. *Compare Blackbird Techs., Inc. v. Joshi*, No. 5:15-cv-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) ("The duty of loyalty is breached, and the breach 'may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.'") *with Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBX), 2011 WL 8427611, at *2 (C.D.

Cal. Mar. 28, 2011) ("Imposing a new duty of loyalty upon all employees not only runs afoul of the [California] Supreme Court's general rule, but it also ignores the consistent safeguards upon employee mobility and the freedom to work in the state of California.").

A recent decision by the Chief Judge of this district persuasively finds that under California law an employee owes a duty of loyalty to an employer. *Am. Shooting Ctr., Inc. v. Secfor Int'l*, No. 13cv1847 BTM (JMA), 2016 WL 1182745, at *7 (S.D. Cal. Mar. 28, 2016) ("Under California law . . . the employee may not transfer his loyalty to a competitor.") (citing *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007)). *American Shooting Center* instructs, "[t]he duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer." *Id.* (quoting *Huong Que*, 150 Cal. App. 4th at 414). *Huong Que* describes the duty this way, "[t]he duty of loyalty embraces several subsidiary obligations, including the duty 'to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors' the duty 'not to acquire a material benefit from a third party in connection with actions taken through the agent's use of the agent's position,' and the duty 'not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.'" 150 Cal. App. 4th at 416. *American Shooting Center* also notes that California law permits an employee to seek employment from a second employer – even make preparations to change employers – during employment with the first employer, without breaching the duty of loyalty. 2016 WL 1182745, at *7.

The University of California alleges that the individual defendants transferred their loyalty to USC and worked directly against the interests of UCSD for their own benefit and the benefit of USC and Aisen. (AC at ¶ 78.) This is sufficient to allege action inimical to UCSD, and thus a claim for relief. Whether the individual employees were simply making permissible preparations to compete or were taking

action inimical to UCSD's interests are fact-intensive issues which must remain to be proven at a later stage of the proceedings. The motion to dismiss the second claim is denied.

***2. Claim 3 – Aiding & Abetting by USC***

In its third claim for relief, the University of California alleges that USC aided and abetted the other defendants in breaching their duties of loyalty. Because the University of California has stated a claim for relief based upon employees Pizzola, Tobias, Jimenez-Maggiora, and Hong's breach of loyalty to UCSD, it has also stated a claim against USC for aiding and abetting the alleged breaches of loyalty. The motion to dismiss the third claim is denied.

***3. Claim 4 – Interference with Contractual Relations***

In its fourth claim for relief, the University of California alleges that individual Defendants Pizzola, Tobias, Jimenez-Maggiora, Hong, Gessert, and Shaffer knew of the UCSD contracts with study sponsors and intentionally disrupted the performance of the contracts. Under California law, the elements for the tort of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (citation omitted). The University of California has sufficiently alleged this claim for relief and the claim is not preempted by the California Uniform Trade Secrets Act.

The amended complaint is filled with allegations about how these individual Defendants worked with Aisen and USC to engineer the movement of the ADCS away from UCSD to USC. Whether for good or for bad, or simply for self-preservation, it is a plausible inference that the individual Defendants intended to interfere with and disrupt the contracts between the University of California and the

ADCS study's sponsors to effect the transfer under Aisen. While there are individual allegations that do not rise to the level of tortious acts (for example, "creating an impression that all ADCS employees would lose their jobs," (AC at ¶ 95)), all of the allegations taken together certainly are sufficient to state a claim for relief against individual Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong, and their motion to dismiss this claim is denied.

***4. Claim 5 – Interference with Prospective Economic Advantage***

In its fifth claim for relief, the University of California alleges that Pizzola, Tobias, Jimenez-Maggiora, and Hong knew of the contracts with study sponsors and probable future economic benefits and intentionally interfered with the economic relationships in order to foster their own relationships with the study sponsors and USC. To plead a claim for intentional interference with prospective business advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citation omitted). "[T]he third element also requires a plaintiff to plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship." *Id.* at 1154 (plaintiff must plead and prove in case-in-chief that defendant's conduct was wrongful by some legal measure other than the fact of interference itself). A plaintiff may rely on a separate claim for relief, as the basis for an independently wrongful act, but only if it is adequately pled. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015).

In the amended complaint, the University of California alleges the independently wrongful act as follows: "Defendants engaged in tortious and

wrongful conduct, including the conversion of UCSD property, causing damage to UCSD's network and systems." (AC at ¶ 102.) With this, the University of California properly states a claim for relief, accepting the allegations as true and the claim for relief is not preempted. Therefore, the motion to dismiss of individual Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong, is denied.

***5. Claim 6 – Computer Crimes Pursuant to California Penal Code § 502***

In the sixth claim for relief, the University of California alleges that all of the defendants violated California Penal Code § 502 which generally proscribes unprivileged access to a computer network. Individual Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong move to dismiss for failure to state a claim upon which relief can be granted.

It is a complicated law. It has been described as an "anti-hacking statute." *Custom Packaging Supply, Inc. v. Phillips*, No. 15-cv-4584-ODW-AGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) ("Section 502 is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose."). And although it is a criminal provision, it also permits a civil claim for relief. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098 (N.D. Cal. 2015) ("Subsection 502(e) provides a private cause of action for any individual who suffers damage or loss as a result of a violation of one of these provisions."). Subsection (c) of § 502 has fourteen subsections. The amended complaint restates (without identifying) subsections one through eight. These subsections cover a plethora of activity. Specifically, the subsections describe as a public offense the following actions:

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies

> any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
> (3) Knowingly and without permission uses or causes to be used computer services.
> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.
> (5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.
> (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.
> (8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

Because of the complexity, it is necessary that the amended complaint use some precision in the allegations. Unfortunately, it does not. The amended complaint does not identify the subsection(s) that any particular individual Defendant is alleged to have violated. In fact, the sixth claim for relief does not identify the *name* of any individual Defendant.

Although § 502 is more than an anti-hacking statute, it is not intended to cover ordinary employees doing ordinary computer things in their ordinary jobs. The employee exception is set out in § 502(h). Section 502(h)(1) is a safe harbor provision and it states,

> [s]ubdivision (c) does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment.

///

///

///

///

In other parts of the amended complaint, Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong[2] are referred to as employees of UCSD. Because individual Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong are alleged to have been employees of UCSD, the § 502(h) exception for employees comes into play. The exception is provided for employees who access computers and networks and who are acting within the scope of their employment. *United States v. Christensen*, 801 F.3d 970, 994 (9th Cir. 2015) ("If access were by definition unauthorized, there would be no need to exempt employees acting within the scope of their lawful employment."); *PQ Labs, Inc. v. Yang Qi*, No. 12-0450 CW, 2014 WL 334453, at *10 (N.D. Cal. Jan. 29, 2014) ("Section 502(h) creates a safe harbor from liability for employees who access a computer or computer network within the scope of their employment."). Because of the exception for employees, a plaintiff must include § 502 allegations that a defendant employee was acting beyond the scope of employment in order to state a claim for relief. This is where the amended complaint falls short.

There are no allegations that any of these four individual Defendants were acting beyond the scope of their employment while acting in ways which might violate § 502(c)(1) through (8). While it is permissible to draw the necessary reasonable inference of acting beyond the scope, it cannot be accomplished with this amended complaint because there are too few facts alleged.

For example, as to Hong, there is no indication of position title, duties, or whether Hong's duties included using UCSD computers (and if so the limits of such use). Hong allegedly was provided a Macbook laptop while employed at UCSD so it can be inferred that some use of a computer was within his scope of employment.

---

[2] It is not alleged directly that Hong was employed at UCSD, but it is alleged that he "reinstalled the operating system on his UCSD-provided Macbook laptop *the day after he resigned from UCSD*," implying that he was an employee. (AC at ¶ 64(h) (emphasis added).)

(AC at ¶ 67(h).) Hong also allegedly somehow acted with Aisen and Jimenez-Maggiora to block access to an account in the cloud on a website called Github. (AC at ¶ 64) ( "UCSD also has discovered that Defendants diverted and blocked UCSD's access to at least one other account in the "cloud," on a source code hosting website called GitHub. Recent discovery further reveals that Defendants Jimenez-Maggiora, and Hong, were directed by, and acted together in a conspiracy with, Defendant Aisen to accomplish this, and did this while all of them were employed by UCSD, and being paid as employees of UCSD."). There is no allegation about whether Hong's employee duties included making cloud accounts or controlling access to accounts at Github. Nor are there allegations as to whether UCSD was even entitled to access to a cloud account on a website called Github.

As to Pizzola, it is at most inferred that he was some type of senior administrative officer at ADCS. (AC at ¶ 49.) Yet, there are no allegations as to Pizzola's duties, or whether the duties included using UCSD computers (and if so the limits of such use). There are no specific allegations that Pizzola accessed or disrupted UCSD computers.

As to Jimenez-Maggiora, there are no allegations as to Jimenez-Maggiora's job title, duties, or whether the duties included using UCSD computers (and if so the limits of such use). He was allegedly given a UCSD laptop and UCSD email and passwords so it can be inferred that the scope of his employment included something to do with computers and email and passwords. (AC at ¶ 67.) Although it is alleged that he purchased an external hard drive and copied the contents of his laptop to the hard drive without requesting anyone's permission, it is not alleged whether such copying was within the scope or beyond the scope of his employment duties.

Tobias is described as having the title of director of administration for the ADCS. (AC at ¶ 22.) There are no allegations as to the scope of Tobias' duties. It could be reasonably inferred that as director of administration, the scope of Tobias'

duties would be wide-ranging in regards to UCSD computers. While it is alleged that Tobias copied UCSD data to USB storage devices, it is not alleged that this action was beyond the scope of her employee duties. (AC at ¶ 67(d).)

The amended complaint fails to state a claim for relief concerning individual Defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong. As these four individuals are alleged to have been employees of the University of California at UCSD, and as the state statute specifically does not apply to persons acting within the scope of their employment, the amended complaint fails to include sufficient allegations. Absent are allegations of the scope of each defendant's employment. Absent are allegations that a defendant acted beyond the scope of employment and specificity as to which subsection of § 502 such act violated. The motion of Pizzola, Tobias, Jimenez-Maggiora, and Hong to dismiss claim six is granted.

***6. Claim 7 – Conversion***

The seventh claim for relief alleges conversion of data, cell phones, laptop computers, and regulatory papers against both Aisen and the individual Defendants. For the same reasons described in the Order deciding the motion to dismiss of Aisen and USC, the Court finds the claim for conversion of *data* is preempted (or superseded) by California's trade secrets act. On the other hand, the claim for conversion of physical devices described as phones and laptops and physical papers described as regulatory papers, may proceed against the individual Defendants. Although Defendants describe the value of such items as *de minimis*, it is plausible that the conversion of the tangible items, in the event conversion is proven, caused more than *de minimis* damages to the University of California.

***7. Claim 10 – Civil Conspiracy***

In the tenth claim for relief, the University of California alleges a general claim of conspiracy by all defendants. The individual Defendants argue that all of the other claims should be dismissed and as a result, there would be no predicate torts upon which to base a civil conspiracy. However, because the University of

California has sufficiently pleaded at least one predicate tort claim, this argument lacks merit.

The individual Defendants also argue that there must be specific allegations of specific actions on the part of each defendant that corresponds to the element of a conspiracy, rather than a generalized group allegation. Rule 8's fair notice requirement suggests the individual Defendants are correct. *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003) ("To successfully plead this cause of action, plaintiff must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action. Such amended allegations, however, must be made within the sections of the complaint that contain plaintiff's claims for the underlying torts."). More than a general allegation of a conspiracy is needed. "To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. . . . General allegations of agreement have been held sufficient, and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged." *Qwest Commc'n v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 WL 3864826, at *3 (E.D. Cal. Aug. 19, 2008) (quoting *Chicago Title Ins. Co. v. Great W. Fin. Corp.*, 69 Cal. 2d 305, 316 (1968)). The amended complaint sufficiently alleges a conspiracy between Aisen and USC. (AC at ¶¶ 13-14.) Regarding the individual Defendants, however, the amended complaint is short on specifics. The Court notes these allegations:

> meetings were taking place among Defendants Aisen, Tobias, Pizzola, and representatives of USC for the purpose of furthering the conspiracy to take from UCSD the ADCS Data as well as to encourage the ADCS employees to resign from UCSD and join USC.

(AC at ¶ 22.) The wrong alleged in here (which is found in the introductory facts

section of the amended complaint) sounds primarily in the tort of conversion of data. The claim for tortious conversion of data, however, is being dismissed as preempted or superceded by the trade secrets act. Thus, there is no foundational tort for the conspiracy claim. Additional conspiracy allegations state:

> Each of Defendants Jeremy Pizzola, Deborah Tobias, Gustavo Jimenez-Maggiora, Phuoc Hong, Hong Mei Qiu, Stefania Bruschi, Jia-Sing So, Mayya Nessirio, Elizabeth Shaffer, Devon Gessert, and Kelly Harless, were UCSD employees who agreed to join Defendant Aisen in a conspiracy to act as "double agents" — ostensibly employed by The Regents but in reality working to undermine UCSD, to advance their own personal interests, and to serve the interests of Defendant USC.
>
> Defendants diverted and blocked UCSD's access to at least one other account in the "cloud," on a source code hosting website called GitHub. Recent discovery further reveals that Defendants Jimenez-Maggiora, and Hong, were directed by, and acted together in a conspiracy with, Defendant Aisen to accomplish this, and did this while all of them were employed by UCSD, and being paid as employees of UCSD.

(AC at ¶¶ 36, 64.) The wrongs alleged in these introductory paragraphs describe that of acting as a double agent and the breaching of the duty of loyalty owed to an employer. As discussed earlier, there is a claim made (the second claim) that the individual Defendants breached their duty of loyalty. Here, it is alleged that they conspired with Aisen to do so. This is barely sufficient to satisfy the fair notice requirement so that it is just to require Pizzola, Tobias, Jimenez-Maggiora, and Hong to defend themselves, but it is enough.

Therefore, the individual Defendants' motion to dismiss the tenth claim for relief is granted in part, and denied in part. The tenth claim for relief for conspiracy to violate the duty of loyalty described in the second claim for relief may proceed against Pizzola, Tobias, Jimenez-Maggiora, and Hong. The claim of a conspiracy by individual defendants Pizzola, Tobias, Jimenez-Maggiora, and Hong to commit any of the other torts set out in the amended complaint is dismissed for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

At this juncture of the proceedings, the motion to dismiss is granted for all claims made against individual Defendants Qiu, Bruschi, So and Nessirio. The motion to dismiss of Pizzola, Tobias, Jimenez-Maggiora, and Hong is granted in part and denied in part.

**IT IS SO ORDERED.**

DATED: April 22, 2016

Hon. Roger T. Benitez
United States District Judge